UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LAWRENCE LINGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3101 |
| | ) | |
| ALFREDA KIBBY, EUGENE McADORY, and SHAN JUMPER, | ) ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff is currently detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. On May 19, 2011, Judge Baker granted Plaintiff's petition for leave to proceed *in forma pauperis*, stating that "[t]he court cannot rule out a constitutional claim regarding the alleged total ban on gaming and electronic devices. The defendants may have a legitimate penological or therapeutic reason for the ban, but the record must be developed before that determination can be made." (5/19/11 order). Defendants were

1

served and discovery deadlines were set in August, 2011. The next month the case was transferred to the undersigned, as a result of the undersigned's appointment as a U.S. District Judge in the Central District's Springfield division.

Now before this Court are Plaintiff's motions to compel and Plaintiffs motion to add three new defendants he believes are responsible for the ban. However, a more serious problem exists with this case: Plaintiff's Complaint does not appear to state a federal claim.

This Court has already addressed the electronic/gaming console ban in another case filed after this one, <u>Schloss v. Ashby</u>, 11-3337 (C.D. Ill., Judge Myerscough). Plaintiffs in <u>Schloss</u> are also Rushville residents. In their original complaint the <u>Schloss</u> plaintiffs challenged, among other things, the ban on gaming consoles. This Court ruled that Plaintiffs stated no claim, writing:

> Similarly, the Court discerns no claim regarding the ban on gaming consoles, to the extent Plaintiffs are trying to pursue such a claim. Humane treatment means the adequate provision of life's basic necessities, not luxuries such as gaming consoles and other electronic equipment. *See, e.g.,* <u>Murphy v. Walker</u>, 51 F.3d 714, 718 (7th Cir. 1995)(pretrial

detainee had no constitutional right to television or cigarettes); Roberts v. Cohn, 63 F.Supp.2d 921, 924 (N.D. Ind. 1999)("It is well established that prison inmates do not have a constitutional right to use or possess typewriters and word processors.").

The only potential constitutional right implicated by the gaming console ban might be the First Amendment, in the sense that the consoles are the only means to view the "speech" in the video games.  *See* Brown v. Entertainment Merchants Ass'n, 131 S.Ct 2729, 2733 (2011)("video games qualify for First Amendment protection").  Yet even if the First Amendment might be implicated, a viable First Amendment claim is not stated because the ban is reasonably related to the legitimate security concerns of the facility.  *See* Turner v. Safley, 482 U.S. 78, 89 (1987)(setting forth legal standard for analyzing First Amendment claims by prisoners). The security concerns are set forth in the program director's memo attached to the complaint: "Advancements in technology have lead to increased ability to obtain/store/trade contraband and/or engage in unauthorized communications and other deceptive practices.  Such practices threaten the safety and security of the facility and the community and interfere with the facility's therapeutic purposes."  (Ex. 1, attached to complaint).

Plaintiffs assert in their complaint that the gaming consoles are not capable of "do[ing] the thing this memo is banning them for," (complaint, p. 17), but Rushville administrators are not required to individually test each electronic device's capability.  They need only articulate a "valid, rational connection" between the ban and the security concern, which the memo does.  Turner, 482 U.S. at 89.  As the memo states, the security concerns arise from the

3

expanding ability of many different kinds of electronics to obtain, store, and communicate information.  Striking down the ban would negatively impact guards' ability to discover contraband.  As to the other Turner factors, Plaintiffs have alternative ways to exercise their First Amendment rights, such as by playing games that do not require a gaming console, while the facility has no ready alternatives to avert the security problem posed by the electronics other than banning them.  *See* Singer v. Raemisch, 593 F.3d 529, 539 (7th Cir. 2010)(banning of fantasy role playing games was rationally related to legitimate penological interests and prisoner had alternative means of exercising right, such as possessing other reading materials or playing allowable games).

Though application of the Turner analysis is often premature at the motion to dismiss stage, *see* Lindell v. Frank, 377 F.3d 655, 657-58 (7th Cir. 2004), here the legitimate penological reasons for the rule are so obvious and well established that dismissal at the pleading stage is proper.  *See* Williams v. Wisconsin, 336 F.3d 576, 582 (7th Cir. 2003)(discussing Turner and affirming dismissal for failure to state a claim regarding parolee's travel restrictions and their incidental interference with his right to marry);  Belton v. Singer, 2011 WL 2690595 *12 (D.N.J. 2011) (unpublished)(dismissing at pleading stage claim by sexually violent detainee challenging confiscation of gaming consoles and other electronics); Hedgespeth v. Bartow, 2010 WL 2990897 *7 (W.D. Wis. 2010)(unpublished)(on summary judgment, finding that rule banning possession of video games and gaming equipment by sexually violent detainee was rationally related to legitimate security interests).

In short, the Court cannot hypothesize a plausible

scenario under which the Constitution would require Rushville to permit its residents to possess video gaming consoles. Such an order would ignore the substantial deference afforded the facility's administrators in making these kinds of decisions. *See* Beard v. Banks, 548 U.S. 521, 528 (2006)("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'")(quoted cite omitted).

Schloss v. Ashby, 11-3337 (C.D. Ill., Judge Myerscough)(10/11/11 order). The memo banning the electronic devices is not attached to Plaintiff's complaint as in Schloss, but the Court may consider the memo because the memo is obviously central to Plaintiff's claims. Plaintiff references the memo in his allegations and assails its reasoning. (Complaint, d/e 1, p. 5, ¶¶ 4-5).

Plaintiff alleges that the security reasons for the ban are "bogus" because many of the devices cannot record and transmit data and because these electronics have been permitted by the facility for the last six years. However, as discussed above, federal courts will not second guess rational security decisions by detention facility administrators.

Plaintiff also alleges that the ban violates his equal protection rights because residents of Rushville must be treated the same as residents of

any state mental facility. However, this Court rejected this argument in the Schloss order as well, reasoning:

> Plaintiffs are not similarly situated to persons confined for treatment in other state mental health facilities. Plaintiffs are in Rushville because they have been "convicted of a sexually violent offense, . . .[and are] dangerous because [they] . . . suffer[] from a mental disorder that makes it substantially probable that . . . [they] will engage in acts of sexual violence." 725 ILCS 207/5(f). Persons confined in other state mental health facilities may also be dangerous to themselves or others, but they do not fit the statutory definition for sexually violent persons. If they did, they would be in Rushville. *See* Thielman v. Leean, 282 F.3d 478, 483 (7th Cir. 2002)("facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high."). In short, there is no equal protection claim because Plaintiffs are not similarly situated to mentally ill persons held in other mental facilities. Additionally, Plaintiffs' alleged differential treatment is rationally related to the fact that they are confined as sexually violent persons. *See* Thielman, 282 F.3d at 485 (uphholding restraints used on sexually violent persons during transport and not on other mentally ill patients: "[I]t is not unreasonable for the State to believe that a person with a mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who nonetheless threatens danger to himself or others.").

Schloss, 11-3377 (10/11/11 order).

In this Court's opinion, Judge Baker's prior order did not

6

definitively make any ruling. His order stated only that a claim could not be ruled out and that Defendants' input was needed for further delineation. In any event, this Court has the authority to reconsider an earlier ruling. <u>Santamarina v. Sears, Roebuck & Co.</u>, 466 F.3d 570 (7th Cir. 2006)(law of case doctrine authorizes reconsideration for compelling reasons). Accordingly, discovery in this case will be stayed until the Court determines whether Plaintiff states any federal claims.

IT IS THEREFORE ORDERED:

    1) The clerk is directed to docket in this case the March 31, 2011, memo attached to the original complaint in case 11-3337 (d/e 1, p. 46). The clerk is further directed to send Plaintiff a copy of that memo.

    2) By January 6, 2012, Defendants are directed to file a motion to dismiss addressing whether Plaintiff states any federal claims.

    3) Discovery is stayed pending a ruling on Defendants' motion to dismiss.

    4) Plaintiff's motions to compel (d/e's 23, 24) and motion to add new defendants (d/e 31) are denied, with leave to renew if his claims

survive Defendants' motion to dismiss.

ENTERED:

FOR THE COURT:

                                                            <u>s/Sue E. Myerscough</u>
                                                  SUE E. MYERSCOUGH
                                      UNITED STATES DISTRICT JUDGE