E-FILED
Friday, 30 June, 2017 12:08:04 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LAWRENCE LINGLE, | ) |
| Plaintiffs, | ) |
| v. | ) No. 11-CV-3101 |
| ALFREDA KIBBY, et al., | ) |
| Defendants. | ) |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

This case began as a challenge to the restrictions on video gaming systems and other electronic devices at the Rushville Treatment and Detention Center, a facility housing individuals pursuant to the Illinois Sexually Violent Persons Act.

This Court dismissed the case for failure to state a claim. The Seventh Circuit reversed as to the ban on video gaming systems. Lingle v. Kibby, 526 Fed. Appx. 665 (7th Cir. 2013). Thereafter, in a different case, the Seventh Circuit affirmed the restriction on video gaming consoles that have internet capability, but reversed as to a claim challenging the restrictions on certain movies and video games. Brown v. Phillips, 801 F.3d 849 (7th Cir. 2015). Discovery

was reopened in this case, and the Court later defined the remaining claim in this case as a challenge to the prohibitions on certain movie and video games. (12/4/15 text order.)

Defendants have filed summary judgment motions on that claim. The problem with Defendants' summary judgment motions is that Defendants do not grapple with the Seventh Circuit's concerns expressed in <u>Brown</u>. <u>Brown</u> can be read as requiring objective data to support Defendants' conclusion that the prohibited movies and games might actually further security and rehabilitation goals. Common sense is not enough. <u>Brown</u>, 801 F.3d at 854 ("some data is needed to connect the goal of reducing the recidivism of sex offenders with a ban on their possessing legal adult pornography."); *see also* <u>Payton v. Cannon</u>, 806 F.3d 1109 (7th Cir. 2015)(affirming prison's ban on sexually explicit materials primarily because plaintiff offered no evidence to counter, but noting that scientific analysis and data are the preferable basis to inform prison policy, not warden's impressions).

Dr. Jumper cites his consultations with unidentified professionals and his education and experience, but his conclusions still seem largely based on unsupported assumptions.

He also cites various studies on pornography and sexual aggression, which are not attached to the motion. He does not adequately explain the basis for his conclusion that these studies support restricting these particular movies and video games. For example, the relevance of a study on violent pornography to the prohibition on a game with "partial nudity, sexual themes, simulated gambling" is not apparent. ("Dead or Alive Extreme Beach Volleyball," d/e 165-2, p. 15.) How do the studies on pornography and aggression support the prohibition of the movie "An Officer and a Gentleman" or "Horrible Bosses"? (d/e 264-3, p. 12.) The restricted list also states that "staff has the right to refuse any movie that appears questionable to staff." (d/e 264-3, p. 8.) Who is authorized to exercise that discretion and how?

Dr. Jumper points out that a conditionally released resident must abide by certain rules, including a rule against possessing "material that is pornographic, sexually oriented, or sexually stimulating, or that depicts or alludes to adult sexual activity or depicts minors under the age of 18, . . . ." (Jumper Aff. ¶ 27.) He concludes that the restricted movie and video game list helps prepare residents for their possible conditional release. However,

he does not explain why restricted access to some "sexually explicit" material now would make it easier to comply with arguably much broader restrictions on conditional release. Additionally, the conditional release rules may themselves be without logical basis. Brown, 801 F.3d at 854 (*citing* United States v. Taylor, 796 F.3d 788, 792–93 (7th Cir.2015) (vacating supervised release condition prohibiting legal adult pornography); United States v. Siegel, 753 F.3d 705, 709 (7th Cir.2014)(allowing rapist to view legal pornography might decrease recidivism)).

The concerns by Security Director Clayton about trading and trafficking "sexually explicit materials" are also too conclusory. Some of the movies and games that *are* allowed also likely contain sexual content, and trading and trafficking concerns apply to all property a resident owns.

In the end, Dr. Jumper's conclusions still appear based on his experience, common sense, and what other states and facilities are doing, which is not enough under Brown. Without more, arguably summary judgment should be granted to *Plaintiff* under Brown on this claim. The Court is not saying that prohibiting some of the games and movies might have scientific support, such as those

portraying sexual violence such as rape.  But the affidavits are still too conclusory to draw even that conclusion.

On a separate issue, Defendants may have a good point that Defendant Scott should be the only Defendant in this case, if Plaintiff seeks only injunctive relief.  Plaintiff will be asked to clarify the relief he seeks.

Additionally, in reviewing the Plaintiff's response, the Court believes it was incorrect in determining that Brown necessarily resolved Plaintiff's claim about the ban on video gaming systems and electronics.  Plaintiff asserts that having a video game is useless without the console to play the game.  He contends that an X Box 360 and an electronic tablet can be purchased without internet capability but the facility will not allow this.  He also asserts that some kind of software could be installed to block internet access.  Plaintiff contends that these arguments and evidence were not considered in Brown.

The Court believes, based on Plaintiff's response, that it may have been premature to conclude in this case that Brown disposed of Plaintiff's entire challenge to the electronics policy.

At this point, the case will be referred for settlement. If settlement is unsuccessful, a conference will be set to discuss how the case will proceed.

**IT IS ORDERED:**

(1) Plaintiff's motions for the Court to appoint an expert are denied (d/e's 206, 223). The Court cannot appoint an expert for Plaintiff in this civil case. The Court does have the power to appoint an independent, neutral expert for the Court under Federal Rule of Civil Procedure 706, but at this point an expert does not appear necessary to assist the Court in understanding the case.

(2) The motions for summary judgment are denied (d/e 212, 219).

(3) Plaintiff's motion for an extension to respond to the dispositive motions is granted (d/e 217). Plaintiff has filed his response.

(4) Defendants' motions for extensions to file replies are granted (d/e's 226, 227). The replies have been filed.

(5) Defendant Jumper's motion to join the DHS Defendants' motion to strike is granted (d/e 233).

(6) Defendants' motion to strike Plaintiff's reply filed as docket entry 230 is denied (d/e 231).

(7) Plaintiff's motion for docket entries is granted (d/e 218) to the extent Plaintiff seeks a copy of the docket sheet.

(8) Plaintiff's motion for counsel is denied (d/e 223). The Court does not have the authority to require an attorney to accept pro bono appointment on a civil case such as this. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In determining whether the Court should attempt to find an attorney to voluntarily take the case, the question is "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" Pruitt, 503 F.3d at 654-55 (7th Cir. 2007). On this record, Plaintiff appears competent to proceed pro se. He has litigation experience, and his pleadings adequately convey the basis for his claims and cite to relevant legal authority. Further, the claims still appear relatively straightforward.

(9) This case is referred to the Magistrate Judge to conduct a settlement conference.

(10) **By July 10, 2017, Plaintiff is directed to file a notice with the Court setting forth in detail the injunctive relief he**

seeks (i.e., what he wants the Court to order Defendants to do) and stating whether he seeks money damages as well. The notice should be short and plain.

(11) **The clerk is directed to mail a copy of the docket sheet to Plaintiff.**

(12) **The clerk is directed to notify the Magistrate Judge of the referral of this case for a settlement conference.**

ENTER: June 30, 2017

FOR THE COURT:

<u>s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE